## IN THE UNTIED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **GAUDET & COMPANY, INC.;** | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **ACE FIRE UNDERWRITERS** | ) | |
| **INSURANCE COMPANY, and** | ) | |
| **CHUBB INDEMNITY** | ) | |
| **INSURANCE COMPANY** | ) | |
| | ) | |
| Defendants. | ) | |

# C O M P L A I N T

## PARTIES

1.     Plaintiff, GAUDET & COMPANY, INC. ("GAUDET"), is an Alabama corporation, and having its principal place of business in Mobile County, Alabama. GAUDET was a franchisee of Right at Home, LLC ("RIGHT AT HOME"), who offered non-medical home care services to residents of Mobile and Baldwin Counties under the Right at Home® trademark.

2.     Defendant, ACE FIRE UNDERWRITERS INSURANCE COMPANY, (hereafter "ACE") is a foreign corporation, incorporated in Pennsylvania, and having its principal place of business in Pennsylvania. At all times material to the allegations in this complaint, ACE was licensed to and did sell

1

insurance policies throughout Alabama.

3.       Defendant, CHUBB INDEMNITY INSURANCE COMPNAY ("CHUBB") is a foreign corporation, incorporated in New York, and having its principal place of business in New Jersey.  At all times material to the allegations in this complaint, was responsible for handling claims under the policy of insurance between ACE and GAUDET.

## JURISDICTION & VENUE

4.       Jurisdiction is founded under the provisions of 28 U.S.C. § 1332 (a), *et seq.* which grants this court jurisdiction in civil actions on the basis of diversity of citizenship where the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). Complete diversity exists between Plaintiff and Defendant, and Plaintiff's claims vastly exceed the jurisdictional threshold of $75,000.00, exclusive of interest and costs.

5.       Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a)(2) which provides venue is appropriate in a jurisdiction "in which a substantial part of the events or omissions giving rise to the claim occurred."  In the instant case, the subject incident and ensuing litigation giving rise to these claims occurred in Mobile, Alabama, and all of the relevant pre-lawsuit demand(s) and settlement "negotiations" originated from Mobile, Alabama and were conducted by the counsel for underlying plaintiff who were located in Mobile, Alabama, which sits in the

Southern District of Alabama, Southern Division.

## FACTS COMMON TO ALL COUNTS

### The ACE/CHUBB Insurance Policy

6.      On or about November 24, 2018, GAUDET purchased and/or renewed a businessowners liability insurance policy (Policy No. HTALD393997021) (hereinafter the "ACE/CHUBB Policy" or the "Policy") issued by ACE/CHUBB.

7.      The ACE/CHUBB Policy listed "GAUDET & COMPANY, INC." as the named insured.

8.      In exchange for the payment of premium, the ACE/CHUBB Policy provided liability coverage obligating ACE/CHUBB to defend and indemnify GAUDET for bodily injury claims made against GAUDET.

9.      The ACE/CHUBB Policy also obligated ACE/CHUBB to defend and indemnify any indemnitee of GAUDET for bodily injury claims made against any such indemnitee, where GAUDET had itself contractually assumed the duty to defend and indemnify such indemnitee.

10.     At all points relevant to the claims set forth herein, GAUDET was current on all premiums due under the policy and the policy was in force and effect supposedly providing the bargained for protection.

### The Franchise Agreement

11.     RIGHT AT HOME is the franchisor of the RIGHT AT HOME®

3

franchise system. RIGHT AT HOME franchises provide non-medical personal home care assistance and companionship care services to seniors and other adults throughout the United States.

12.    In or around September 2015, GAUDET and RIGHT AT HOME first entered into a Franchise Agreement,[1] whereby GAUDET was granted the right to operate a RIGHT AT HOME branded Franchise and utilize RIGHT AT HOME's System for a period of 10 years in a designated area in and around South Alabama.

13.    The Franchise Agreement between GAUDET and RIGHT AT HOME contains the following terms and language relating to defense and indemnity:

> 22.4    Franchisee will defend, at its own cost, and indemnify and hold harmless Franchisor, its shareholders, directors, officers, employees and agents, from and against any and all losses, costs, claims, expenses (including, without limitation, reasonable accountant, attorney and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses, and travel and living expenses), damages and liabilities, however caused, resulting directly or indirectly, from or pertaining to (i) the use, condition or construction, equipping, decorating, maintenance or operation of the Franchised Business, including the sale of any service or product sold from the Franchised Business, except to the extent caused by Franchisor's gross negligence or willful misconduct with regard to the foregoing, or (ii) any breach of this Agreement by Franchisee. Such losses, claims, costs, expenses, damages and liabilities will include, without limitation, those arising from latent or other defects in the Franchised Business, its services or products, materials or equipment whether or not discoverable by Franchisor, and those arising

---

[1] Neal Gaudet and RIGHT AT HOME were parties to a Right at Home Franchise Agreement dated September 17, 2015. Effective September 14, 2016, Neal Gaudet assigned his right, title and interest in the 2015 Franchise Agreement to GAUDET. GAUDET and RIGHT AT HOME also entered into another Right at Home Franchise Agreement dated June 11, 2018. The Franchise Agreements between GAUDET and RIGHT AT HOME will collectively be referred to as the "Franchise Agreement".

from the death or injury to any person or arising from damage to the property of Franchisee or Franchisor, their agents or employees or any third person, firm or corporation, whether or not such losses, claims, costs, expenses, damages or liabilities were actually or allegedly caused wholly or in part through the active or passive negligence of Franchisor or any of its agents or employees or resulted from any strict liability imposed on Franchisor or any of its agents or employees. The indemnification and hold harmless will survive termination of this Agreement.

14.     As clearly and unambiguously stated in Section 22.4 of the Franchise Agreement, GAUDET expressly and unambiguously agreed to indemnify and defend RIGHT AT HOME for RIGHT AT HOME's active or passive negligence.

**The Underlying Incident**

15.     On or about August 20, 2018, Emmett Sellers was living at The Arlington apartment complex in Spanish Fort, Baldwin County, Alabama. Mr. Sellers had Alzheimer's disease and required twenty-four hour non-medical home care services and assistance. At that time, Kelly Whitlow, Mr. Sellers's daughter, served as the court-appointed guardian of Mr. Sellers' person.

16.     On the morning of August 21, 2018, Emmet Sellers was under the care of GAUDET and GAUDET's employee, Shantonia Ross. After Shantonia Ross left Mr. Sellers' apartment that morning, Mr. Sellers was found to have severe burns to his body, including specifically his buttocks, genitalia, arms, legs and feet.

17.     The severe burns to Emmett Sellers' body were allegedly caused by GAUDET employee Shantonia Ross placing and leaving Mr. Sellers in a bathtub of

hot water.

18.     On August 27, 2018, Emmett Sellers died at USA Medical Center allegedly as a result of the burns caused by being left in a bathtub of hot water.

19.     At the time of Mr. Sellers' injuries, GAUDET was doing business as Right at Home of West Mobile pursuant to the Franchise Agreement between GAUDET and RIGHT AT HOME.

**The Underlying Lawsuit**

20.     Kelly Whitlow, in her capacity as administrator of the estate of Emmett Sellers, filed a wrongful death lawsuit against GAUDET and RIGHT AT HOME on January 24, 2019, in the Circuit Court for Mobile County, CV-2019-900248 (hereinafter the "Underlying Lawsuit").

21.     Specifically, Plaintiff in the Underlying Lawsuit alleged that GAUDET, GAUDET employee Shantonia Ross, and RIGHT AT HOME negligently/wantonly provided non-medical homecare by placing and leaving Mr. Sellers in a hot bath, which caused severe burns to the body of Mr. Sellers which ultimately caused his death. The Plaintiff also alleged negligent/wanton hiring, training, and supervision claims, as well as fraudulent representation claims against GAUDET and RIGHT AT HOME.

**RIGHT AT HOME's Demand for Defense and Indemnity**

22.    On January 19, 2019, RIGHT AT HOME[2] made a written demand on GAUDET and ACE/CHUBB for defense and indemnity under the Franchise Agreement. After detailing the basis of its demand, RIGHT AT HOME concluded with the following language:

> If you fail, refuse, or neglect to undertake the defense and indemnity of our insured, you will be deemed bound by the results of the trial should one result thereafter, and an action will be brought against you by our insured for the amount of the judgment, interest, court costs, investigative and trial expenses, and attorney's fees, all of which were necessarily incurred as a result of your failure to take over the defense and handling of this claim.

23.    The Franchise Agreement between GAUDET and RIGHT AT HOME contains the following terms and conditions relating to indemnity and defense:

> 22.4  **Franchisee will defend, at its own cost, and indemnify and hold harmless Franchisor, its shareholders, directors, officers, employees and agents, from and against any and all losses, costs, claims, expenses (including, without limitation, reasonable accountant, attorney and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses, and travel  and  living expenses), damages and liabilities, however caused, resulting directly or indirectly, from or pertaining to (i) the use, condition or construction, equipping, decorating, maintenance or operation of the Franchised Business, including the sale of any service or product sold from the Franchised Business, except to the extent caused by Franchisor's gross negligence or willful misconduct with regard to the foregoing, or (ii) any breach of this Agreement by Franchisee.** Such losses, claims, costs, expenses, damages and liabilities will include,

---

[2] RIGHT AT HOME was insured under a policy of insurance issued by Philadelphia Indemnity Insurance Company ("PIIC"), and therefore PIIC tendered the defense and indemnity to GAUDET and ACE.

without limitation, those arising from latent or other defects in the Franchised Business, its services or products, materials or equipment whether or not discoverable by Franchisor, and those arising from the death or injury to any person or arising from damage to the property of Franchisee or Franchisor, their agents or employees or any third person, firm or corporation, **whether or not such losses, claims, costs, expenses, damages or liabilities were actually or allegedly caused wholly or in part through the active or passive negligence of Franchisor or any of its agents or employees** or resulted from any strict liability imposed on Franchisor or any of its agents or employees. The indemnification and hold harmless will survive termination of this Agreement.

(emphasis added).

24.     The underlying Plaintiff's claims of negligence, wantonness, breach of contract, and fraud against RIGHT AT HOME fell squarely within the indemnity provision of the Franchise Agreement between GAUDET and RIGHT AT HOME, which required GAUDET to be fully responsible for the defense of and to indemnify RIGHT AT HOME.

25.     Despite the clear and unambiguous language of the Franchise Agreement which expressly and unambiguously obligated GAUDET to indemnify and defend RIGHT AT HOME for some, if not all, of the underlying Plaintiff's claims (including those for RIGHT AT HOME's "active or passive negligence"), ACE/CHUBB needlessly endangered its insured GAUDET by ignoring, for well over a year, RIGHT AT HOME's January 19, 2019, written demand for defense and indemnity and repeated subsequent demands by RIGHT AT HOME, its insurer, and even GAUDET's personally-retained counsel.

8

26.     Throughout this time that ACE/CHUBB simply chose to ignore and disregard RIGHT AT HOME's repeated demands for defense and indemnity, RIGHT AT HOME continued to incur defense costs that should have been paid by ACE/CHUBB pursuant the ACE/CHUBB Policy issued to GAUDET and the Franchise Agreement.

27.     Finally, on March 2, 2020, ACE/CHUBB[3] issued and sent a written rejection of RIGHT AT HOME's demand for defense and indemnity to RIGHT AT HOME's insurer PICC.

28.     Astoundingly, however, ACE/CHUBB chose to not send a copy of this written rejection of RIGHT AT HOME's demand for defense and indemnity to GAUDET.[4]

29.     ACE/CHUBB's March 2, 2020, written rejection of RIGHT AT HOME's demand for defense and indemnity included a coverage analysis and explanation which (as detailed below) wrongly interpreted the ACE/CHUBB policy, in conjunction with the Franchise Agreement, as *not* providing coverage for RIGHT AT HOME's claim for defense and indemnity.[5]

---

[3] Chubb North America Claims was responsible for handling claims under the policy of insurance between ACE and GAUDET, and therefore responded on behalf of ACE.

[4] GAUDET would not receive a copy of ACE/CHUBB's March 2, 2020, written rejection of RIGHT AT HOME's demand for defense and indemnity for over another eight months until November 11, 2020, at which time ACE/CHUBB had already undertaken GAUDET's defense in a cross-claim filed by RIGHT AT HOME seeking said defense and indemnity from GAUDET.

[5] The March 2, 2020, written rejection also provided a coverage analysis of RIGHT AT HOME's claims that it qualified as an additional insured under the policy. Though the status of RIGHT AT

30.    In addition to the incorrect *coverage* analysis and explanation, ACE/CHUBB's March 2, 2020, written rejection of RIGHT AT HOME's demand for defense and indemnity also included an incorrect (and in fact misleading) analysis and interpretation of the Franchise Agreement between GAUDET and RIGHT AT HOME to which ACE/CHUBB was not a party. At no point prior to March 2, 2020, had GAUDET authorized ACE/CHUBB to communicate with RIGHT AT HOME regarding GAUDET's position as to any provision of the Franchise Agreement between GAUDET and RIGHT AT HOME to which ACE/CHUBB was not a party.

31.    In complete contravention and abject dereliction of ACE/CHUBB's duty of good faith and fair dealing towards GAUDET and in disregard and violation of industry standards of care and best practices with respect to claims handling, ACE/CHUBB's March 2, 2020, written rejection of RIGHT AT HOME's demand for defense and indemnity, (a document which (1) set forth a coverage analysis and position adverse to ACE/CHUBB's insured, GAUDET, and (2) undertook, without GAUDET's authorization, to communicate a position on behalf of GAUDET with regard to the Franchise Agreement) was written, signed and sent by the same claims

---

HOME as a possible additional insured under the ACE/CHUBB policy is not the subject of GAUDET's claims set forth in this complaint, the question of whether RIGHT AT HOME was an additional insured under the ACE/CHUBB policy was consequential to GAUDET and any coverage analysis of that question should also have been provided to GAUDET, and further should not have been undertaken or communicated by the ACE/CHUBB claims handler assigned to manage the liability claims which at that time were being pursued against GAUDET in the Underlying Lawsuit .

handler ACE/CHUBB had assigned to manage the liability claims at that very time being pursued against GAUDET in the Underlying Lawsuit.

32.    Despite having taken well over a year to even acknowledge RIGHT AT HOME's demand, ACE/CHUBB's March 2, 2020, written rejection of said demand negligently, wantonly, wrongfully and fraudulently misrepresented that GAUDET had no contractual obligation to indemnify RIGHT AT HOME.

33.    The March 2, 2020 ACE/CHUBB rejection letter specifically states:

The Agreement contains a contractual indemnity provision that requires Gaudet to "defend…and indemnify and hold harmless [Right at Home]…from and against any and all losses, costs, claims, expenses…however, caused, resulting directly or indirectly, from or pertaining to (i) the use, condition or construction, equipping, decorating, maintenance, or operation of the Franchised Business, except to the extent caused by [Right at Home's] gross negligence or willful misconduct…"
…

The Franchise agreement does not require Gaudet to defend and indemnify Right at Home for Right at Home's own negligence. Further, the Agreement excludes indemnification for gross negligence and willful misconduct of Right at Home. Here, the Complaint alleges Right at Home is responsible for its own negligence and its wanton conduct. The indemnity provisions do not extend to these allegations.

34.    Unbelievably, ACE/CHUBB's quote of the Franchise Agreement's indemnity provision simply leaves out (after the ellipse "…") the exact language in the Franchise Agreement that obligated GAUDET to do the very thing ACE/CHUBB was arguing that GAUDET was not obligated to do – that is, indemnify and defend RIGHT AT HOME for RIGHT AT HOME's own negligence.

11

35.    Thus, ACE/CHUBB made its decision to deny RIGHT AT HOME's demand by negligently, wantonly, wrongfully and fraudulently citing only part of the indemnity provision in the Franchise Agreement and negligently, wantonly, wrongfully and fraudulently ignoring and/or omitting the remainder of the indemnity provision which expressly covers the claims against RIGHT AT HOME, specifically the following:

> Such losses . . . will include, without limitation, . . . those arising from the death or injury to any person . . . **whether or not such losses, claims, costs, expenses, damages or liabilities were actually or allegedly caused wholly or in part through the active or passive negligence of Franchisor or any of its agents or employees** or resulted from any strict liability imposed on Franchisor or any of its agents or employees.

36.    Even a cursory reading of the indemnity provision would have revealed that ACE/CHUBB's position was wholly frivolous and without legal or factual justification.

37.    After RIGHT AT HOME's demand was rejected by ACE/CHUBB, RIGHT AT HOME was forced to defend the Underlying Lawsuit at its own expense.

38.    On June 5, 2020, RIGHT AT HOME's counsel first received a copy of ACE/CHUBB's written rejection of March 2, 2020, and immediately wrote ACE/CHUBB-retained counsel for GAUDET in the Underlying Lawsuit to express his dismay at the positions taken by ACE/CHUBB in the coverage opinion:

> Following up on our recent email exchanges, today I received a copy of Chubb's attached letter both declining coverage and indemnity to my

12

clients for the above-referenced claim. I am frankly shocked by the positions taken by Chubb on both issues, which have placed Gaudet & Company (and Neal and Alyssa Gaudet individually as guarantors) in default of multiple provisions of the applicable Franchise Agreement.

39.    In the same June 5 email, RIGHT AT HOME's counsel also asked ACE/CHUBB to clarify by June 12th whether ACE/CHUBB's stated position that the Franchise Agreement did not require GAUDET to defend and indemnify RIGHT AT HOME for RIGHT AT HOME's own negligence was the position of Neal Gaudet and Alyssa Gaudet individually as guarantors under the Franchise Agreement, and if ACE/CHUBB was authorized to speak on their behalf:

> Please confirm that the position taken by Chubb in this letter with respect to the indemnity demand tendered is the position of Gaudet & Company and Neal and Alyssa Gaudet. Alternatively, please confirm that Chubb has some type of general or blanket authority to bind Gaudet & Company and Neal and Alyssa Gaudet on these issues. Note that I am not asking for any position on coverage – merely whether or not Gaudet & Company and Neal and Alyssa Gaudet individually endorse and adopt Chubb's position set out in this letter as their own.

> If I do not have a response by close of business on June 12, 2020, we will consider that silence as confirmation that Gaudet & Company and Neal and Alyssa Gaudet do in fact individually endorse and adopt Chubb's position. Of course if they do not adopt and endorse this position, please let me know the steps that they intend to take to honor this obligation within the same time period.

40.    Subsequently, Plaintiff in the Underlying Lawsuit made a time-limited demand for policy limits from both GAUDET's insurer – ACE/CHUBB – and RIGHT AT HOME's insurer – PIIC.

13

**RIGHT AT HOME's Cross-Claim Against GAUDET**

41.     On August 31, 2020, RIGHT AT HOME filed cross-claim (within the Underlying Lawsuit) against GAUDET for indemnity and defense pursuant to the Franchise Agreement. (Doc. 586). In its cross-claim, RIGHT AT HOME set forth in detail how ACE/CHUBB had misrepresented the language of the Franchise Agreement in ACE/CHUBB's March 2, 2020, written rejection of RIGHT AT HOME's demand for defense and indemnity.

**RIGHT AT HOME's Demand and Offer to Release GAUDET from Multi-Million Dollar Indemnity Obligations in Exchange for Less than $100,000 that GAUDET and ACE/CHUBB Owed Anyway**

42.     On September 3, 2020, one day before the expiration of the time-limited demand from the Plaintiff in the Underlying Lawsuit, counsel for PIIC sent a demand on behalf of its insured, RIGHT AT HOME, to ACE/CHUBB demanding that ACE/CHUBB tender its full liability limits to settle the Underlying Lawsuit. PIIC's letter *again* pointed out that ACE/CHUBB had wrongfully denied RIGHT AT HOME's demand for indemnity and defense:

> Additionally, Chubb previously wrongfully denied the demand for defense and indemnity made by Risemark.[6] As a result of this wrongful denial, Risemark filed a crossclaim against your insured, Gaudet & Company based on the indemnity provisions and insurance provisions in the Franchise Agreement. PIIC and Risemark further demand that ACE reimburse PIIC for all defense costs, including attorneys' fees and expenses….

---

[6] Risemark Holdings, LLC is the parent company of RIGHT AT HOME, who was also a named insured with RIGHT AT HOME under the PIIC policy.

43.    In the same letter, PIIC also offered to settle and release all of it and RIGHT AT HOME'S claims for indemnity and defense against GAUDET pursuant to the following terms:

> Assuming Chubb/ACE agrees to tender its policy limits, as well as paying the attorneys' fees and expenses associated with the defense of the underlying case, the fees of personal counsel for Risemark, and the attorneys' fees incurred for outside counsel retained by PIIC, which **totals $97,175**, Risemark will agree to dismiss its cross-claim against Gaudet & Company based on insurance and indemnity provisions in the Franchise Agreement. Risemark will reserve all rights and claims, contractual or otherwise, that may otherwise arise or may arise out of the Franchise Agreement. Risemark and PIIC will also agree to release any and all claims against Chubb/ACE associated with the Emmett Sellers action.

Stated another way, assuming ACE/CHUBB would pay its liability limits to settle the underlying Plaintiff's claims in the Underlying Lawsuit, PIIC offered to release its all of its indemnity claims against ACE/CHUBB's insured, GAUDET (which all parties knew had a total potential value far in excess of the insurance coverage available GAUDET) if ACE/CHUBB would agree to reimburse the $97,175.00 that RIGHT AT HOME and PICC had incurred as a result of GAUDET's and ACE/CHUBB's failure to abide by the Franchise Agreement and the insurance coverage provided in GAUDET's ACE/CHUBB Policy.

44.    ACE/CHUBB never sent RIGHT AT HOME's and PICC's demand/offer to GAUDET.

45.    ACE/CHUBB were contractually obligated by the ACE/CHUBB Policy

15

to pay indemnity and costs of defense for RIGHT AT HOME. Under the ACE/CHUBB Policy, attorneys' fees are owed separate and apart from indemnity Despite this, ACE/CHUBB <u>never even responded to RIGHT AT HOME's/PIIC's settlement demand</u>. Nor did ACE/CHUBB provide GAUDET with an opportunity to respond to RIGHT AT HOME's/PIIC's settlement demand independently of ACE/CHUBB.

46.     On or before September 4, 2020, PIIC agreed to pay a confidential, seven-figure amount to obtain a full release of claims against RIGHT AT HOME in the Underlying Lawsuit. A *Pro Tanto* Order of dismissal of all claims against RIGHT AT HOME was entered on October 14, 2020. (Doc. 596).

47.     On October 7, 2020, GAUDET's ACE/CHUBB-retained counsel emailed RIGHT AT HOME's counsel requesting an additional extension of time to respond on behalf of GAUDET to RIGHT AT HOME's cross-claim. RIGHT AT HOME's counsel responded, stating as follows with respect to RIGHT AT HOME and PIIC's September 3, 2020 demand/offer:

> I really need something on file on this. I'm getting huge client pressure about this and we need this issue resolved. What is your client's position? I can't figure out why this isn't being paid. **We basically offered to give away all of our monetary claims for a fraction of our expense and your client's guaranteed exposure on the insurance claims**.

(emphasis added).

48.     GAUDET's ACE/CHUBB-retained counsel responded later on October

7 by asking "[h]as your client made a specific offer to settle these claims as if so I have missed it..... please let me know as I would be happy to approach my client about an opportunity to resolve this dispute." RIGHT AT HOME's counsel then re-sent RIGHT AT HOME's and PIIC's September 2, 2020, demand to GAUDET's ACE/CHUBB-retained counsel.

## ACE/CHUBB Assume GAUDET's Defense of RIGHT AT HOME's Cross-Claim

49.    On October 13, GAUDET's ACE/CHUBB-retained counsel undertook the representation of GAUDET in the defense against RIGHT AT HOME's cross-claim. Specifically, ACE/CHUBB-retained counsel for GAUDET filed a motion to dismiss RIGHT AT HOME's cross-claim against GAUDET on the basis that RIGHT AT HOME released any claims against GAUDET in the confidential release RIGHT AT HOME executed with the Plaintiff in the Underlying Lawsuit. (Doc. 589).

50.    ACE/CHUBB did _not_ issue a reservation of rights letter to GAUDET before undertaking the defense of RIGHT AT HOME's cross-claim against GAUDET.

51.    On November 11, 2020, GAUDET was first provided with a copy of ACE/CHUBB's March 2, 2020, rejection letter by GAUDET's ACE/CHUBB-retained counsel, who had received the same not from ACE/CHUBB, but from counsel for RIGHT AT HOME

52.    On November 3, 2020, RIGHT AT HOME filed suit against GAUDET and GAUDET's individual owners – Neal Gaudet and Alyssa Gaudet – in the United

17

States District Court for the District of Nebraska. In that suit, RIGHT AT HOME sued GAUDET for (a) breaches of the applicable franchise agreements premised in part on ACE/CHUBB's apparent refusal on GAUDET's behalf to provide RIGHT AT HOME defense and indemnity in the Underlying Lawsuit; (b) a declaratory judgment that RIGHT AT HOME's termination of the franchise agreements was proper; and (c) a declaratory judgment that GAUDET was required to comply with the post-termination obligations under the Franchise Agreement.[7]

53.    Also on November 3, 2020, but after RIGHT AT HOME had filed the declaratory judgment action in Nebraska, GAUDET's personally-retained counsel filed a pleading styled as a "compulsory counterclaim" in the Underlying Lawsuit. (Doc. 600). The notice of appearance filed by GAUDET's personally-retained counsel specifically states that counsel was appearing "as counsel of record for Gaudet & Company, Inc. with respect to compulsory counterclaims." (Doc. 598).

**ACE/CHUBB Withdraws its Defense of RIGHT AT HOME's Cross-Claim and the Cross-Claim Proceeds to Judgment**

54.    On December 17, 2020, ACE/CHUBB sent a letter to GAUDET informing GAUDET that ACE/CHUBB intended to withdraw its defense and indemnity of GAUDET in the Underlying Lawsuit even though RIGHT AT HOME's cross-claim for contractual indemnity remained pending against GAUDET. Of course,

---

[7] RIGHT AT HOME subsequently amended its complaint for declaratory relief.

because ACE/CHUBB undertook the defense of GAUDET on the cross-claim without first issuing a reservation of rights to GAUDET, ACE/CHUBB had already waived the right to withdraw indemnity and defense from GAUDET on RIGHT AT HOME's cross-claim. *Burnham Shoes, Inc. v. W. Am. Ins. Co.*, 504 So. 2d 238, 242 (Ala. 1987), *abrogated on other grounds by Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057 (Ala. 1999); *Shelby Steel Fabricators, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 569 So. 2d 309, 310-11 (Ala. 1990).

55.    In its December 17 letter, however, ACE/CHUBB once again negligently, wantonly, wrongfully and fraudulently took the position that it owed no further duty to defend or indemnify after paying its liability limits to settle the claims of the Plaintiff in the Underlying Lawsuit, stating:

> [A]s you know, Chubb submitted a settlement payment of $[REDACTED] on the Whitlow/Sellers claim (Claim # KY19K206018X). Pursuant to the policy, and as we previously discussed, Chubb's defense obligation ends once we have paid the limit of the insurance, as we have. I will be closing the file and I have instructed Jannea to submit her final bills to Chubb.

56.    Thereafter, on January 4, 2021, counsel originally retained by ACE/CHUBB to defend GAUDET filed a motion to withdraw as counsel for GAUDET, despite ACE/CHUBB not reserving the right to withdraw defense and indemnity from GAUDET. (Doc. 647). The Order granting the motion to withdraw was granted that same day. (Doc. 654). Neither ACE/CHUBB nor counsel retained by ACE/CHUBB responded to the September 3, 2020, letter from PIIC before

19

withdrawing from the indemnity and defense of GAUDET.

57.    On February 12, 2021, RIGHT AT HOME filed an opposition to GAUDET's motion to dismiss RIGHT AT HOME's cross-claim and a cross-motion for summary judgment on RIGHT AT HOME's cross-claim against GAUDET. (Doc. 671).

58.    On the morning of February 26, 2021, the Court in the Underlying Lawsuit held a hearing on all of the pending motions. (Doc. 668). As a result of the hearing, the Court denied GAUDET's motion to dismiss RIGHT AT HOME's cross-claim. (Docs. 688 & 690).

59.    On June 2, 2021, the Court in the Underlying Lawsuit entered an Order granting RIGHT AT HOME's cross-motion for summary judgment against GAUDET, and entered judgment in the amount of $5,218,812.66 against GAUDET. (Doc. 716). The Court's Order specifically states in relevant part:

> There are no genuine issues of material fact, and Right at Home is entitled to a judgment as a matter law that the parties' indemnity agreement was valid, enforceable and in force during all times relevant to the Whitlow wrongful death claim. It is similarly clear and undisputed that the Whitlow wrongful death claim fell within the scope of the indemnity agreement, and that Gaudet's claims of independent torts or negligence on the part of Right at Home are unavailing. The indemnity agreement specifically covers "losses, claims, costs, expenses, damages or liabilities were actually or allegedly caused wholly or in part through the active or passive negligence of [Right at Home] or any of its agents or employees," and Gaudet admitted that its own conduct would be the only factual genesis of a fraud claim premised on the performance of employee background checks.

60.     As a direct and proximate result of ACE/CHUBB's negligent, wanton, wrongful, fraudulent, and bad faith failure to defend, indemnify, and settle all of RIGHT AT HOME's claims for defense and indemnity against GAUDET in exchange for the payment of defense costs totaling $97,175.00, (which were owed by ACE/CHUBB separate and apart from ACE/CHUBB's indemnity obligations) GAUDET was needlessly subjected to the financially devastating judgment of $5,218,812.66.

## COUNT I

### Negligent/Wanton Failure to Settle by ACE/CHUBB

61.     Plaintiff re-adopts and re-alleges all preceding paragraphs as if fully set forth herein.

62.     In making a decision not to settle, an insurer must exercise reasonable care or ordinary care; that is, such care as a reasonably prudent insurer would exercise under the same or similar circumstances.

63.     ACE/CHUBB knew and/or should have known that the policy of insurance it issued GAUDET by its express terms, and/or by virtue of its ambiguous, conflicting and imprecise terms, obligated ACE/CHUBB to defend and indemnify any indemnitee of GAUDET for bodily injury claims made against any such indemnitee, where GAUDET had itself contractually assumed the duty to defend and indemnify

such indemnitee.

64.    ACE/CHUBB knew and/or should have known that GAUDET had, by the terms of its Franchise Agreement with RIGHT AT HOME, assumed the duty to defend and indemnify RIGHT AT HOME at GAUDET's cost, "from and against any and all losses, costs, claims, expenses, damages and liabilities" resulting from the "operation of the Franchised Business" or "any breach of [the Franchise Agreement] by [GAUDET]."

65.    ACE/CHUBB knew and/or should have known that, per the express language of the Franchise Agreement, GAUDET's duty defend and indemnify RIGHT AT HOME extended to "losses, claims, costs, expenses, damages or liabilities" which were "actually or allegedly caused wholly or in part through the active or passive negligence of [RIGHT AT HOME] or any [RIGHT AT HOME's] agents or employees."

66.    ACE/CHUBB knew and/or should have known that RIGHT AT HOME's claims for defense and indemnity against GAUDET would, if allowed to proceed to judgment, vastly exceed any and all applicable insurance coverages available GAUDET and thereby cause GAUDET's complete financial devastation.

67.    ACE/CHUBB negligently, wantonly and recklessly disregarded the known and foreseeable risk of financial devastation to its insured, GAUDET, by failing to pay the $97,175, that RIGHT AT HOME and PIIC demanded ACE/CHUBB pay to

obtain a release from RIGHT AT HOME for all RIGHT AT HOME'S claims for defense and indemnity against GAUDET.

68.     Alternatively, and/or additionally, ACE/CHUBB negligently, wantonly and recklessly disregarded the known and foreseeable risk of financial devastation to its insured, GAUDET, by failing to even offer any amount whatsoever or seek negotiated settlement of any type in follow up to RIGHT AT HOME's $97,175 demand and offer to release GAUDET from RIGHT AT HOME's other claims for defense and indemnity.

69.     ACE/CHUBB negligently, wantonly and recklessly continued to refuse to pay the $97,175 (or whatever lesser amount could have been negotiated had ACE/CHUBB made any effort to protect its insured) RIGHT AT HOME offered to accept in exchange for releasing GAUDET from all of the defense and indemnity obligations GAUDET owed RIGHT AT HOME over the course of several months during which ACE/CHUBB actually assumed GAUDET's defense of RIGHT AT HOME's cross-claim without reserving ACE/CHUBB's right to contest coverage as to those claims or to withdraw its defense at a later date.

70.     ACE/CHUBB negligently, wantonly and recklessly continued to refuse to pay the $97,175 (or whatever lesser amount could have been negotiated had ACE/CHUBB made any effort to protect its insured) RIGHT AT HOME/PIIC offered to accept in exchange for releasing GAUDET from all of the defense and indemnity

obligations GAUDET owed RIGHT AT HOME over the course of several months during which counsel for RIGHT AT HOME/PIIC repeatedly put ACE/CHUBB on written notice of the fact that ACE/CHUBB was not basing its decision on an accurate reading of the Franchise Agreement.

71.    Had ACE/CHUBB acted as a reasonable insurance carrier under the circumstances, it would have absolutely taken advantage of the opportunity offered by RIGHT AT HOME and PIIC to obtain a release of all RIGHT AT HOME's claims for defense and indemnity expenses and costs against GAUDET (claims ACE/CHUBB knew and/or should have known would financially devastate GAUDET).

72.    As a result of ACE/CHUBB's negligence, wantonness and recklessness in failing to settle the RIGHT AT HOME's claims against GAUDET as described herein, GAUDET has suffered the following harms and losses:

(a)    GAUDET is liable for the full $5,218,812.66 judgement rendered against GAUDET on RIGHT AT HOME's cross-claims in the Underlying Lawsuit along with costs and interest which has and will continue to accrue.

(b)    Consequential damages resulting from ACE/CHUBB's failure to settle the RIGHT AT HOME's cross-claim against GAUDET.

WHEREFORE, Plaintiff demands judgment against Defendants awarding

compensatory damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury which will fairly and adequately compensate the Plaintiff for the above described damages and injuries.

## COUNT II

### ACE/CHUBB's Bad Faith Failure to Properly Investigate, Defend, and Settle RIGHT AT HOME's Claims against GAUDET

73.    Plaintiff re-adopts and re-alleges all preceding paragraphs as if fully set forth herein.

74.    In addition to its duty to use reasonable care in seeking out and acting upon settlement opportunities ACE/CHUBB, by virtue of its contract of insurance issued to GAUDET, owed GAUDET the duty to act honestly and in good faith towards GAUDET with regard to the investigation, defense and potential settlement of those claims made against GAUDET by RIGHT AT HOME.

75.    ACE/CHUBB knew and/or should have known that the policy of insurance it issued GAUDET by its express terms, and/or by virtue of its ambiguous, conflicting and imprecise terms, obligated ACE/CHUBB to defend and indemnify any indemnitee of GAUDET for bodily injury claims made against any such indemnitee, where GAUDET had itself contractually assumed the duty to defend and indemnify such indemnitee.

76.    ACE/CHUBB knew and/or should have known that GAUDET had, by

the terms of its Franchise Agreement with RIGHT AT HOME, assumed the duty to defend and indemnify RIGHT AT HOME at GAUDET's cost, "from and against any and all losses, costs, claims, expenses, damages and liabilities" resulting from the "operation of the Franchised Business" or "any breach of [the Franchise Agreement] by [Gaudet]."

77.    ACE/CHUBB knew and/or should have known that, per the express language of the Franchise Agreement, GAUDET's duty defend and indemnify RIGHT AT HOME extended to "losses, claims, costs, expenses, damages or liabilities" which were "actually or allegedly caused wholly or in part through the active or passive negligence of [RIGHT AT HOME] or any [RIGHT AT HOME's] agents or employees."

78.    ACE/CHUBB knew and/or should have known that RIGHT AT HOME's claims for defense and indemnity against GAUDET would, if allowed to proceed to judgment, vastly exceed any and all applicable insurance coverages available GAUDET and thereby cause GAUDET's complete financial devastation.

79.    ACE/CHUBB negligently, wantonly, recklessly, willfully and/or intentionally disregarded the known and foreseeable risk of financial devastation to its insured, GAUDET, by failing to pay the $97,175, that RIGHT AT HOME and PIIC demanded ACE/CHUBB pay to obtain a release from RIGHT AT HOME of all RIGHT AT HOME'S claims for defense and indemnity against GAUDET.

80.    Alternatively, and/or additionally, ACE/CHUBB negligently, wantonly, recklessly, willfully and/or intentionally disregarded the known and foreseeable risk of financial devastation to its insured, GAUDET, by failing to even offer any amount whatsoever or seek negotiated settlement of any type in follow up to RIGHT AT HOME's $97,175 demand and offer to release GAUDET from RIGHT AT HOME's claims for defense and indemnity.

81.    ACE/CHUBB negligently, wantonly, recklessly, willfully and/or intentionally continued to refuse to pay the $97,175 (or whatever lesser amount could have been negotiated had ACE/CHUBB made any effort to protect its insured) RIGHT AT HOME offered to accept in exchange for releasing GAUDET from all of the defense and indemnity obligations GAUDET owed RIGHT AT HOME over the course of several months during which ACE/CHUBB actually assumed GAUDET's defense against RIGHT AT HOME's cross-claim without reserving ACE/CHUBB's right to contest coverage as to those claims or to withdraw its defense at a later date.

82.    ACE/CHUBB negligently, wantonly, recklessly, willfully and/or intentionally continued to refuse to pay the $97,175 (or whatever lesser amount could have been negotiated had ACE/CHUBB made any effort to protect its insured) RIGHT AT HOME/PIIC offered to accept in exchange for releasing GAUDET from all of the defense and indemnity obligations GAUDET owed RIGHT AT HOME over the course of several months during which counsel for RIGHT AT HOME/PIIC repeatedly

put ACE/CHUBB on written notice of the fact that ACE/CHUBB was not basing its decision on an accurate reading of the Franchise Agreement.

83.    With that knowledge, when viewing the totality of the circumstances, ACE/CHUBB acted in bad faith when it negligently, wantonly, recklessly, willfully and/or intentionally denied the RIGHT AT HOME's claims for defense and indemnity against GAUDET and when it failed to investigate, defend, manage, and settle those claims, in particular:

   a.   ACE/CHUBB failed to conduct a reasonable investigation into the facts of the subject incident and RIGHT AT HOME's demand for indemnity and defense, and knowingly and intentionally placed its insureds in a position of extreme peril.

   b.   ACE/CHUBB failed to conduct a competent investigation of the facts surrounding the subject incident and RIGHT AT HOME's demand for indemnity and defense, despite knowing that its insureds were grossly underinsured with respect to RIGHT AT HOME's claims.

   c.   Despite having failed to conduct a competent investigation and analysis of the facts surrounding the subject incident and RIGHT AT HOME's demand for indemnity and defense, ACE/CHUBB misleadingly indicated that it had done such an investigation.

   d.   ACE/CHUBB delayed and denied RIGHT AT HOME's claims and

completely disregarded the weakness of its insured's position from the standpoint of both liability and damages with respect to RIGHT AT HOME's claims.

e.  ACE/CHUBB denied the claims after waiving the right to withdraw and when coverage was clear and full defense and indemnity should have been continued.

f.  ACE/CHUBB fabricated a defense strategy wherein it wrongfully refused coverage to GAUDET when a full defense should have been tendered to RIGHT AT HOME. At the same time, ACE/CHUBB's counsel was given the file to defend GAUDET and all claims. This conduct and how the case was defended violated the duty of good faith that was owed to GAUDET by ACE/CHUBB.

g.  ACE/CHUBB placed its interests ahead of its insured by exposing GAUDET to massive liability in the hopes that it would avoid having to pay monies it owed RIGHT AT HOME for RIGHT AT HOME's defense.

h.  ACE/CHUBB never responded to RIGHT AT HOME's settlement demand and never made a single offer in an attempt to protect its insured.

i.  ACE/CHUBB failed to seize upon RIGHT AT HOME's/PIIC's offer and agreement to settle all indemnity and defense claims within the available coverage under the ACE/CHUBB Policy. This even included offers to

settle RIGHT AT HOME's certain seven-figure indemnity claim against GAUDET for the payment of defense costs totaling $97,175.00.

j.  ACE/CHUBB failed to communicate all of RIGHT AT HOME's demands to its insured.

k.  ACE/CHUBB's failure to offer any money in settlement of RIGHT AT HOME's claims was arbitrary, inflexible, and completely indifferent to GAUDET's interests.

l.  ACE/CHUBB failed to examine the financial risk to its insured in the event of a judgment in favor of RIGHT AT HOME;

m.  ACE/CHUBB failed to consider the strengths and weaknesses of all of the evidence from a liability and damages standpoint;

n.  In the alternative, ACE/CHUBB failed to properly defend the cross-claim and failed to properly report to GAUDET pursuant to the requirements set forth in *L & S Roofing*.

o.  ACE/CHUBB repeatedly took erroneous and wrongful coverage positions with the respect to its insured in an attempt to avoid its clear legal, contractual, and fiduciary responsibilities it owed to GAUDET.

p.  ACE/CHUBB withdrew coverage to GAUDET for the indemnity and defense claims made by RIGHT AT HOME. ACE/CHUBB never sent GAUDET a reservation of rights letter, and also failed to clearly

30

communicate with the insureds about their coverage position.

q.   ACE/CHUBB refused to make a settlement offer while it illegally fabricated policy defenses and intentionally misinterpreted the plain policy language and Franchise Agreement in an attempt to justify its wrongful exclusion of coverage. ACE/CHUBB took contradictory coverage positions as to the ACE/CHUBB Policy when the Policy and Franchise Agreement provided coverage.

r.   ACE/CHUBB twisted policy exclusion language and the Franchise Agreement language to justify the denial of coverage and denial of indemnity.

s.   ACE/CHUBB attempted to avoid its clear legal, contractual, and fiduciary responsibilities to its insured.

t.   ACE/CHUBB failed to follow advice of counsel as to coverage, anticipated liability findings, and settlement.

u.   ACE/CHUBB failed to appoint separate people inside the company to handle the coverage file and the liability file.

v.   ACE/CHUBB failed to appoint outside counsel to exclusively handle the coverage file and solely report to ACE/CHUBB.

w.   ACE/CHUBB utilized the same internal claims personnel to act as the claim handler and to give coverage opinions.

x.  ACE/CHUBB failed to use qualified and skilled persons in coverage analysis.

y.  ACE/CHUBB failed to seek the advice of independent counsel and file a declaratory judgment action, seek intervention, or take other legal steps to adjudicate and decide the coverage dispute. In the subject matter, a stay of RIGHT AT HOME's cases and a declaratory judgment should have been sought considering ACE/CHUBB was presented with a substantial excess indemnity claim in which coverage was arguably in dispute. This would have allowed the issues with coverage to have been decided before the questions of liability and damages had been adjudicated and the insureds position and standing compromised.

z.  ACE/CHUBB failed to clarify its coverage position with GAUDET. All denial and/or a reservation of rights letters must be unambiguous and fully inform the insured about the insurance companies' position on coverage as of the date of each and every letter, but ACE/CHUBB wrongfully and in bad faith failed to ever send a reservation of rights letter to GAUDET. ACE/CHUBB also had the obligation to fully inform GAUDET of all developments during the life of the claim/suit relevant to any aspect of policy coverage, coverage denial, coverage acceptance, and new or different policy defenses. ACE/CHUBB was

required to clearly and unambiguously explain the change and apprise the insured as to the present status of all coverage issues as of that date. ACE/CHUBB acted in bad faith as it completely failed in this regard and mislead its insureds.

aa. ACE/CHUBB undertook communications with, and made legal representations to, RIGHT AT HOME concerning the Franchise Agreement (to which ACE/CHUBB was not a party) on *behalf of* GAUDET without GAUDET's consent and without even informing GAUDET that ACE/CHUB was engaging in said communications or making such representations.

bb. ACE/CHUBB either completely failed to engage an independent analysis of coverage under its policy for RIGHT AT HOME's claims against GAUDET, or chose to withhold and hide any coverage opinions it did perform from its insured, GAUDET.

cc. ACE/CHUBB placed its interests ahead of GAUDET's

dd. ACE/CHUBB's evaluation of RIGHT AT HOME' claims against GAUDET was incompetent and/or dishonest.

ee. ACE/CHUBB failed to conduct a full investigation and analysis of RIGHT AT HOME's claims against GAUDET.

ff. ACE/CHUBB failed to establish appropriate reserves to settle RIGHT

33

AT HOME's claims against GAUDET.

    gg. ACE/CHUBB failed to respond to RIGHT AT HOME's settlement offers.

    hh. ACE/CHUBB delayed responding to RIGHT AT HOME's settlement offers.

    ii. ACE/CHUBB failed to explore opportunities to settle RIGHT AT HOME's claims against GAUDET when it would have been prudent to do so.

    jj. ACE/CHUBB failed to keep GAUDET advised of relevant facts and developments.

    kk. ACE/CHUBB acted in an arbitrary, inflexible manner, indifferent to the consequences to GAUDET.

84.    Had ACE/CHUBB honestly and in good faith investigated, defended and evaluated/pursued potential settlement opportunities with respect to RIGHT AT HOME's claims against GAUDET, it would have obtained a release of all RIGHT AT HOME's claims for defense and indemnity expenses and costs against GAUDET (claims ACE/CHUBB knew and/or should have known would financially devastate GAUDET).

85.    As a result of ACE/CHUBB's bad faith as articulated above, GAUDET has suffered the additional harms and losses:

(a)    GAUDET is liable for the full $5,218,812.66 judgement rendered against GAUDET on RIGHT AT HOME's cross-claims in the Underlying Lawsuit along with costs and interest which has and will continue to accrue.

(b)    Consequential damages resulting from ACE/CHUBB's failure to settle the RIGHT AT HOME's cross-claim against GAUDET.

WHEREFORE, Plaintiff demands judgment against Defendants awarding compensatory damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury which will fairly and adequately compensate the Plaintiff for the above-described damages and injuries, punitive damages in an amount which adequately reflects the enormity of Defendants' wrongful conduct and which will prevent other similar or wrongful conduct, together with pre- and post-judgment interest, costs and attorneys' fees.

s/Robert P. Bruner
**ROBERT P. BRUNER (ASB-7673-B50B)**
**DAVID L. BRUCE (ASB-1273-V42H)**
Attorneys for Plaintiffs

35

OF COUNSEL:

**BELT & BRUNER, P.C.**
880 Montclair Rd., Ste 300
Birmingham, AL  35203
Phone: (205) 933-1500
Fax: (205) 933-5500
E-Mail:  robertb@beltlawfirm.com
          davidb@beltlawfirm.com


## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all counts herein in this action.


s/Robert P. Bruner
OF COUNSEL

## **REQUEST FOR CERTIFIED MAIL SERVICE BY CLERK**

Attorney for Plaintiffs hereby request that the Clerk serve the Defendant by certified mail, return receipt requested at the addresses listed below.

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
c/o The Corporation Co.
2 North Jackson St., Suite 605
Montgomery, AL 36104

**CHUBB INDEMNITY INSURANCE COMPANY**
c/o CT Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104

s/Robert P. Bruner
OF COUNSEL