# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| GAUDET & COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIV. A. NO. 21-372-JB-MU |
| ) | |
| ACE FIRE UNDERWRITERS ) | |
| INSURANCE COMPANY, *et al.,* ) | |
| ) | |
| Defendants. ) | |

## ORDER ON MOTIONS TO COMPEL

This action is before the Court on the Motion to Compel (Doc. 138) and Supplemental Motion to Compel (Doc. 139) filed by Plaintiff Gaudet & Company, Inc., the Opposition filed by Defendants ACE Fire Underwriters Insurance Company and ACE American Insurance Company (Doc. 145), and Plaintiff's reply briefs (Docs. 147, 148). These motions have been referred to the undersigned for pretrial disposition pursuant to 28 U.S.C. § 636(b)(3) and Local Rule 72.2(c)(1). For the reasons discussed below, the Court finds the motions are **GRANTED in part and DENIED in part**.

## BACKGROUND

This action arises from an underlying wrongful death lawsuit in which Gaudet, a home healthcare services provider, was a defendant along with its franchisor, Right at Home, LLC (RAH) (the Whitlow Lawsuit). In January 2019, the estate of a deceased Gaudet client brought a wrongful death suit against Gaudet and RAH, alleging negligent provision of services and negligent hiring, among other claims. Gaudet and RAH were defended by separate insurers - Gaudet by ACE and RAH by Philadelphia Indemnity Insurance Company (PIIC). On March 2, 2020, ACE denied RAH's coverage demand

from PIIC, concluding, in part, that RAH was not an "additional insured" under the ACE policy issued to Gaudet. RAH subsequently filed a crossclaim against Gaudet seeking indemnification. The crossclaim was filed amid Gaudet and RAH consummating separate settlements with the plaintiff in the Whitlow Lawsuit. RAH later obtained a judgment on its crossclaim against Gaudet for $5.2 million – comprised of its approximately $5 million settlement plus litigation expenses.

In this action, Plaintiff seeks to recover the amount of the judgment against it from Defendants. Plaintiff asserts claims for negligent or wanton failure to settle; bad faith failure to investigate, defend, and settle; and tortious interference. Among other aspects of Defendants' claim handling, Plaintiff takes issue with Defendants' March 2, 2020, decision to deny the RAH tender. With this summary of the underlying state court litigation and this action, the Court turns to discuss the outstanding discovery motions.

## **LEGAL STANDARD**

Fed. R. Civ. P 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" The party seeking to compel discovery bears the initial burden of establishing that the information sought is relevant. *Peacock v. Merrill*, No. CA 05-0377-BH-C, 2008 WL 176375, at *8 (S.D. Ala. Jan. 17, 2008). That party need only show relevance; it does not bear the burden of proving proportionality. *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) ("The Advisory Committee Note makes clear…that the [2015] amendment [to Rule 26(b)] does not place the burden of proving proportionality on the party seeking discovery.").

"Under the federal rules, relevancy is 'construed broadly to encompass any matter

that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (quoting *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978)). "Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement." *Id.* Additionally, wider latitude is given to a bad-faith plaintiff during the discovery process:

> This Court has held that, because of the heavy burden the plaintiff carries in proving…bad faith, and because the defendant in a…bad faith action is usually the sole possessor of the information needed to meet the burden of proof, wider latitude is given…a bad faith plaintiff during the discovery process.

*Ex parte O'Neal*, 713 So. 2d 956, 959 (Ala. 1998). Thus, "[w]here there is a doubt over relevancy, the court should still permit discovery." *Coker*, 177 F.R.D. at 685.

Once the party seeking discovery makes his initial showing, the opposing party bears the burden of establishing that the discovery is improper. *Hibbett Patient Care, LLC v. Pharmacists Mut. Ins. Co.*, No. CV 16-00231-WS-C, 2017 WL 4817992, at *2 (S.D. Ala. Jan. 26, 2017). ("The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted…to even merit consideration, an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden."). Boilerplate claims that discovery is not proportional are insufficient; instead, the party resisting discovery must specifically show how the requested discovery is not proportional.

3

**DISCOVERY AT ISSUE**

The Court will address the discovery requests at issue in the manner in which Plaintiff presents them in its Motions to Compel.

**A. Alleged Deficiencies with Ace's Privilege Log**

**1. Information Redacted/Withheld on Claims of Confidentiality and Relevance**

**Documents at Issue**: ACE-Withheld-001057[1], ACE-001870, 001803-69, 003018, 007779-80, 010387-89, 010488-89, 010490-92, 010493-95, 010496-97, 010498-500, 010501-04, 010506-07, 010510, 010513, 010903-04, 011100-01, 011103-10, 011112-14, 011115-18, 011119-22, 011123-25, 011126-29, 011130-32, 011231-33, 011234-37, 011238-39, 011240-41, 011242-43, 011245, 011247-49, 011425, 011427-28, 011431, 011433-35, 011803-04, 011806-07, 011809-10, 011815-16, 011847, 012008-10, 012015, 013785-87, 013821-22, 013879, 014180-85, 014200-04, 014217-21, 014234-38, 014251-55, 014266-70, 014271, 014273-78, 014286-88, 014293-96, 014305-06, 014321-26, 014335-37, 014345, 014355-59, 014366, 014375, 014385-86, 014849-50, 014852, 014858, 014860.

Plaintiff objects to the large number of documents redacted by Defendants based on confidentiality and/or relevance and states that Defendants' privilege log is deficient, as it does not distinguish which information is redacted on the basis of which claim. Plaintiff further alleges that Defendants have "offered no factual support or other evidence to support any of these claims." (Doc. 138, PageID.2399). Defendants counter that they are entitled to redact information that they contend contains "either information belonging to other insureds or confidential business, privileged, technical information relating to Defendants' insurance operations." (Doc. 145, PageID.3063). The disputed documents were produced to the Court for *in-camera* review.

The Court has reviewed the documents provided, and although it does not claim

---

[1] Plaintiff notes in its reply that ACE-Withheld-001057 has now been produced, but it contains a redaction based on a claim of relevance. (Doc. 147; PageID. 3080, n. 4).

4

to have undertaken a line-by-line review of each redaction made on the basis of confidentiality and/or relevance, it finds that all of these documents should be produced without such redactions. As to redactions based on confidentiality, this Court in *WNE Cap. Holdings* ruled against redactions on that basis, explaining:

> [i]t should go without saying that "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. Confidentiality concerns in many cases may be addressed with an appropriate protective order."

*WNE Cap. Holdings Corp. v. Rockwell Automation, Inc.,* No. CV 09-0733-WS-C, 2011 WL 13254691, at *5 (S.D. Ala. Aug. 4, 2011) (citing *Barrington v. Mortgage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *1 n.3 (S.D. Fla. Dec. 10, 2007)). The undersigned has not seen any redacted information that would constitute confidential, proprietary business information, and even if such information were present, no evidence has been presented that the existing Protective Order would not adequately protect such sensitive information.

In *WNE Cap. Holdings*, this Court also addressed redactions based on relevance in adopting the logic of *Beverage Distributors, Inc. v. Miller Brewing Co.*, Nos. 2:08-cv-827, et al., 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010), in which that court "examined the ostensibly conflicting precedent cited by the parties, synthesized it, and then cogently laid out a general rule as to when it is proper to redact irrelevant information from documents produced during discovery," stating in relevant part:

> **These decisions are not necessarily irreconcilable.** The themes which pervade each of them are (1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an *in camera* inspection of redacted documents merely to confirm the relevance or irrelevance of redacted

5

information, but only when necessary to protect privileged material whose production might waive the privilege.

**In those cases cited by defendants where redactions were approved, the number of redacted documents appeared to be small, and the content of the redactions was readily apparent…In each of these cases, there was little or no burden placed on the court to review a large volume of redacted documents, and because the redactions involved a single type of document and one or two discrete categories of allegedly irrelevant information, both the opposing parties and the courts were able to argue and resolve the legal issues in an intelligent and expeditious fashion.**

*WNE Cap. Holdings Corp. v. Rockwell Automation, Inc.,* No. CV 09-0733-WS-C, 2011 WL 13254691, at *8 (S.D. Ala. Aug. 4, 2011) (citing *Beverage Distributors*, 2010 WL 1727640, at *4-5) (emphasis in original).  Those findings are equally appropriate here, as the number of redacted documents at issue is not small and the content of the redactions are not readily apparent.  After reviewing these documents, the undersigned finds that Defendants will not be harmed by producing unredacted versions of these documents that may contain information on other insureds or the handling of other claims,[2] which Defendants assert is confidential and/or irrelevant, as all documents are covered by the existing Protective Order.  (Docs. 26 and 27).

Further, the Court agrees with Plaintiff's argument that Defendants have previously withheld and redacted information based on confidentiality and/or relevance that has now been produced and is clearly relevant to the claims asserted by Plaintiff.  Notably, this includes the Large Loss Report, which has now been produced and was provided to Court under seal in support of Plaintiff's reply.  (Doc. 150). The Report has a section entitled "Claims Analysis" that discusses the handling of the claim at issue.  The Court can find

---

[2] The undersigned did not see any instances of personally identifying information of individuals in the redactions.

no basis upon which it would have been appropriate to withhold this document and agrees that it calls into question other redactions made by Defendants. The undersigned also saw other examples of documents that appear relevant to the claims at issue that remain redacted, including the email string contained in documents ACE-011112, 011115, and 011119, as well as certain entries in the spreadsheet contained in ACE-011109-011110. In addition, there are many instances of inconsistent redactions among duplicative documents/email chains.[3] The inconsistent nature of these redactions undermines Defendants' position that these redactions are necessary to protect against the disclosure of confidential business information and/or irrelevant information.

For these reasons, Plaintiff's Motion to Compel is due to be **GRANTED** as to any documents withheld or redactions made on the basis of confidentiality and/or relevance.

**2. Additional Materials Withheld on Claims of Attorney-Client Privilege and Work Product**

**Withheld Documents at Issue**: ACE-Withheld-000055, 000056-57, 000058-64, 000065-67, 000068-71, 000076-87, 000088-92, 000094-101, 000102-110, 000111-426, 000427-741, and 000742-1056.

Defendants state that ACE-Withheld-000055-000093[4] are "identical copies of materials this Court has already reviewed *in-camera* and determined to be privileged." (Doc. 145; PageID.3064). The undersigned has reviewed these documents and compared them to those produced for *in-camera* review on June 30, 2023, and it agrees that the documents appear to be duplicates of those reviewed in conjunction with the Court's previous Order on in Camera Review (Doc. 122). In that Order, the undersigned

---

[3] For example, all of ACE-011232-011233 is redacted and portions of the subject line are redacted in 011231, while this same information is unredacted in other documents (compare to ACE-010387-88 and 011235-011237).
[4] Defendants explained in providing materials for *in-camera* review that ACE-Withheld-000093 was inadvertantly included and has already been produced to Plaintiff.

held that the documents "are protected and due to be withheld from production." (*Id.*).

Accordingly, the Court stands by its previous Order,[5] and Plaintiff's Motion to Compel is **DENIED** as to ACE-Withheld-000055-000092.

As to the remaining documents withheld based on attorney-client privilege and work product protection, Defendants state in their response that they have produced ACE-Withheld 000094-001056 "subject to redacting any communications seeking legal advice," and wholly unredacted versions have been provided to the Court for *in-camera* review. (Doc. 145, PageID.3061).[6] The Court notes that of this group of 962 documents that had been withheld, Defendants have now produced a majority of these documents to Plaintiff. Only a small handful of these documents, consisting of those that still contain redactions, were produced to the Court for *in-camera* review. The Court understands Plaintiff's frustration that such a large number of documents were initially withheld in their entirety by Defendants on the basis of privilege but have now been produced with limited redactions after the filing of Plaintiff's Motions to Compel.

Nonetheless, after reviewing the remaining redactions, the Court finds that they are communications protected by the attorney-client privilege. The redactions pertain to direct communications with Sheila O'Brian, whose email signature identifies her as Managing Counsel, NA OGC – Commercial Insurance, and that appear to be for the purpose of obtaining legal advice. "'[T]he attorney-client privilege applies to corporations and protects communications to corporate counsel for purpose of obtaining legal advice." *United States ex rel. Heesch v. Diagnostic Physicians Grp., P.C.*, No. CV 11-00364-KD-

---

[5] Plaintiff filed an objection challenging this Order, but the Order was affirmed by the District Judge (Doc. 162).
[6] Defendants explained in providing materials for *in-camera* review that the redacted documents were produced to Plaintiff as ACE-014864-015827.

B, 2014 WL 12603513, at *2 (S.D. Ala. June 25, 2014) (citing *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 796 (E.D. La. 2007)). "The protection extends to communications flowing from the client to the attorney, as well as to advice flowing from the attorney to the client." *Id.* Additional redactions pertain to communications between non-lawyer employees conveying prior legal advice received from counsel to other employees with a need to know, which are also privileged communications. "The [attorney-client] privilege protects 'communications between corporate employees in which prior [legal] advice received is being transmitted to those who have a need to know in the scope of their corporate responsibilities.'" *Id.* (citing *United States, et rel Baklid-Kunz v. Halifax Hosp. Medical Center*, 2012 WL 5415108, at *3 (M.D. Fla. Nov. 6, 2012)).

Accordingly, Plaintiff's Motion to Compel is **DENIED** as to any remaining redactions based on privilege in ACE-Withheld-000094-0001056 (produced as ACE-014864-015827).

3. **Additional Documents Redacted on Claims of Attorney-Client Privilege and Work Product**

   **Redacted Documents at Issue**: ACE-007708, 007723, 010906,[7] 011067, 011251, 011446, 012822-24

These documents have been reviewed by the Court *in-camera*, and the Court finds that, for the reasons stated in the immediately preceding Section A.2, the majority of the redactions are appropriate to shield communications among non-lawyer employees conveying the prior advice of counsel. However, the Court also finds there are a few redactions that should be removed, which are described below:

ACE-011446: The fourth paragraph in the email from Joseph Coray to Michelle

---

[7] The Court does not see any redactions on the "redacted" version of this document that was provided for *in-camera* review. Further, this email only conveys attachments and does not contain any text in the body of the email.

9

Shaver at 5:35pm should not be redacted. These redactions concern reserves, and information on reserves has been ordered to be produced, as set forth in Section B.5 below.

ACE-012822-012824: The only information that should be redacted on these pages is the communication directly related to prior advice of counsel in the email from Joseph Coray to Karen Keyer at 7:21pm, *i.e.,* only the end of the sentence after "but was never asked…". The sentence immediately following this one, information regarding reserves, and the preceding emails in this chain should be unredacted, as the Court does not see any basis for those redactions.

Therefore, regarding this request, Plaintiff's Motion to Compel is **GRANTED in part and DENIED in part.**

### 4. Tara Elliott's Initial Draft of Ace's Denial Letter Withheld on Claim of Work Product

**Withheld Document at Issue:** ACE-Withheld-000072-75

Plaintiff alleges that Defendants have improperly withheld "what appears to be Tara Elliot's initial draft denial letter," and Plaintiff asserts that this initial version of the letter was not subject to the undersigned's prior *in-camera* review. (Doc. 138, PageID.2412). Defendants respond that this "Court has already reviewed the draft coverage letter and determined that the letter is protected by privilege" in its previous Order on In Camera Review (Doc. 122). (Doc. 145, PageID.3066). Defendants explain that ACE-Withheld 000072-75 "is merely a copy of one of the documents bates labeled ACE-Withheld 000002 to ACE-Withheld-0000054," which are the documents that were produced for *in-camera* review on June 30, 2023, and are the subject of the previous Order. (*Id.* at n.2). Further, as noted in Section A.2 above, Defendants state that ACE-Withheld-000055-92

10

are "identical copies" of ACE-Withheld 000002-54.  (*Id.* at PageID.3064).

The undersigned has reviewed both sets of documents - ACE-Withheld 000002-54 and ACE-Withheld-000055-92 - and determined that ACE-Withheld-000072-75 is in fact a duplicate of draft letters found in those documents. Because it is a duplicate of those reviewed in conjunction with the Court's previous Order on in Camera Review (Doc. 122), the Court again stands by its finding that the documents "are protected and due to be withheld from production," which has now been affirmed by the District Judge (Doc. 162). Accordingly, Plaintiff's Motion to Compel is **DENIED** as to ACE-Withheld-000072-75.

### B. Alleged Deficiencies with Ace's Responses to Gaudet's Discovery Requests

#### 1. Supplemental RFP No. 3 – "Requirements" Document

Plaintiff seeks to compel the production of what is referred to in depositions with Defendants' employee and corporate representative Michelle Shaver as the "Requirements" document.  Among other information, Plaintiff states that Shaver testified that the "document provides information concerning what forms need to be attached to a policy to provide additional insured coverage if additional insured status is not conferred simply by the language of the product itself."  (Doc. 138, PageID.2415).  Defendants have not produced this document to Plaintiff or to the court for *in-camera review*, arguing instead that they "are entitled to protect highly technical business proprietary information, especially given the lack of relevance to the interpretations of Gaudet's Policy."  (Doc. 145; PageID.3068).

For the reasons stated above in Section A.1, Defendants' arguments regarding withholding this document based on confidentiality and/or relevance fail here where there has been no showing that the Protective Order in place would be inadequate to protect

the information at issue. Further, Plaintiff is entitled to this document as Gaudet has produced testimony establishing that the Requirements document may contain information relevant to Defendants' affirmative defense that RAH was not an additional insured under the policy at issue. Plaintiff's Motion to Compel is **GRANTED**, and Defendants are ordered to produce the Requirements document.

### 2. Supplemental RFP Nos. 4 & 5 – Marketplace/Fast Track Materials

Defendants have produced these documents after the filing of Plaintiff's Motion to Compel. (Doc. 147, PageID.3092). As a result, this request is **MOOT**.

### 3. RFP Nos. 1, 2, 21 & 22[8] – Electronic Communications, Ace's Computer System, and Document Preservation Policies and Procedures

First, in response to RFP Nos. 21 and 22, Plaintiff seeks to compel Defendants to produce its entire document entitled "Chubb Records Management Policies," rather than just the two sections it has produced - Section "RM-10: Email Management" (pages 21-22 of 32) and Section "RM-13: Networking, Collaboration and Messaging Tools" (pages 26-28 of 32).[9] (Doc. 139, PageID.2963). Defendants state that the two sections they have produced comply with the Court's prior discovery Order on these RFP Nos. (Doc. 112, PageID.1792-93), which they assert only required them "to produce records management policies for e-mails and chat messages." (Doc. 145, PageID.3068).

The undersigned disagrees with Defendants' interpretation of its prior Order and clarifies that the Order requires the production of the entire Records Management Policies document, as it appears the document would be responsive to Plaintiff's RFP Nos. 21 and

---

[8] Plaintiff appears to have mistakenly listed RFP Nos. 20 and 21 (rather than 21 and 22) in its motion headings on this topic.
[9] These documents have been provided to the Court under seal in support of Plainitff's Supplemental Motion to Compel (Docs. 143-1, 143-2).

12

22, which request "all manuals or written materials which address the claims database or the computer system that contains information about previously submitted claims, how to use said system, and its capabilities" and policies and procedures governing preservation of ESI.  In the Court's prior Order, the undersigned found that "Plaintiff's requests are relevant and proportional, [and] seek discoverable material," and ordered Defendants to "respond fully" to all four of Plaintiff's RFP Nos. 1, 2, 21 and 22. (Doc. 112, PageID.1792).  The instruction to "search for and produce any chat log/chat system communications responsive in its possession" was not intended to limit the scope of Defendants' responses to only information on chat or email communication but was simply intended as an additional directive on specific searches Defendants must undertake.  (*Id*. at PageID.1793).

Therefore, Plaintiff's Motion to Compel is **GRANTED** as to this request, and Defendants must produce the entire "Chubb Records Management Policies" document.

Plaintiff's second request on this subject concerns whether Defendants' corporate representative was adequately prepared to testify regarding item No. 25 of its 30(b)(6) notice, which requests "[t]estimony regarding the existence and location of any records or materials of any type related to your handling of the underlying claim and litigation." (Doc. 139, PageID.2968).  Defendants state that their corporate representative, Sandra Sutton, "was prepared to testify regarding (1) how Defendants' maintain documents in their email and claims systems, (2) Defendants' policies for saving emails to the claim file; (3) the different means by which claim handlers communicate (letters, e-mail, chat, telephone), and (4) where and how records are stored in the claims and email systems by the claims handlers."  (Doc. 145, PageID.3071).  However, Plaintiff argues that based

on its request, Sutton should have been, but was not prepared, "to provide any testimony relating to Ace's ESI preservation policies or Ace's searches for responsive emails," and further notes that she did not know anything about Ace's Records Management Policy. (Doc. 139, PageID.2968-69).  Plaintiff also argues that Defendants' responses to RFPs Nos. 21 and 22 and its failure to prepare its corporate representative properly violate "the parties' agreed-to order relating to the production of ESI, including the parties' agreement to act 'reasonably and cooperatively to comply with requests from the Requesting Party for information about the reporting capabilities, structure, organization, query language and schema of the database.'"  (Doc. 148, PageID.3150).  Plaintiff seeks an order compelling Defendants to "present another corporate representative who is fully prepared to provide 'complete, knowledgeable and binding answers on behalf of [Ace]' regarding Ace's email system, claims system, the databases it has searched for responses [*sic*] electronic communications, the databases that Ace has not searched, when Ace undertook said searches, the results of these searches, including whether materials required to be preserved were not in fact preserved." (*Id*. at PageID.3154).

Regardless of the interpretation of Plaintiff's request in its deposition notice, Defendants should have produced, and have now been specifically ordered to produce, their complete Records Management Policies, which should provide some of the information Plaintiff is seeking with its RFP Nos. 21 and 22 and deposition notice.  Further, the undersigned agrees that Plaintiff is entitled, under the parties' agreed upon ESI Protocol (Doc. 15-1), to more complete responses to its RFP Nos. 1, 2, 21, and 22, which Plaintiff has sought through numerous requests to Defendants (Docs. 138-4, PageID.2609-10, 73-1, PageID.1169).  Plaintiff is entitled to responses to these requests

14

that provide information about the search capabilities of Defendants' systems, the databases Defendants have searched, as well as the databases Defendants have not searched or are unable to search (for example, email accounts of employees no longer employed by Defendants), including when the searches or attempted searches were performed. Plaintiff's Motion to Compel is **GRANTED** as described in the preceding sentence. Defendants are not required, at this time, to produce another corporate representative to testify as to request No. 25 in the 30(b)(6) notice.

### 4. RFP Nos. 1 & 2 – Ace's Large Loss Report

Defendants have produced the Large Loss Report. As a result, this request is **MOOT**. However, the Court notes that it appears the Large Loss Report has been produced with a redaction on ACE-016213. If this redaction is based on confidentiality and/or relevance, that redaction is ordered to be removed.

### 5. RFP No. 5 – Information on Reserves

Defendants state in their response that they will produce the "reserving log referenced by Sandra Sutton in the 30(b)(6) deposition." (Doc. 145, PageID.3061). Plaintiff states in its reply brief that the Reserve Log produced by ACE "appears incomplete and also appears to have the initial reserve set by Ace redacted." (Doc. 148, PageID.3155). Plaintiff further states it has requested a complete copy of the Reserve Log but has not yet received a response from ACE. (*Id.*) Plaintiff's reply requests an order compelling ACE to produce a complete, unredacted copy of the Reserve Log. (*Id.*).

As Plaintiff correctly notes, the Court has previously reviewed and issued an order on the "Reserves Issue" and ordered that information regarding the reserve amounts should be produced pursuant to a protective order. (Doc. 112, PageID.1788-89). ACE

15

has not raised any objection to the sufficiency of the existing Protective Order entered in this case, and it has not produced any information to support an argument that the reserve information is privileged. The Court's previous Order held that "reserve information is relevant in this case which centers on claims of bad faith." (*Id*. at PageID.1789). Accordingly, Plaintiff's request is due to be **GRANTED**, and the complete, unredacted Reserve Log is ordered to be produced by Defendants. Further, to the extent any redactions regarding reserves are still at issue in other documents produced or due to be produced by Defendants, those redactions are ordered to be removed and unredacted versions produced to Plaintiff.[10]

### 6. RFP No. 9 – Performance Review Evaluations

**Redacted Documents at Issue**: ACE-014272-014400

Plaintiff seeks to compel Defendants to produce unredacted versions of year-end performance reviews for employees involved in the handling of the claim at issue. (Doc. 139, PageID.2975-77). Defendants do not specifically address this request in their response and instead argue generally that they are entitled to redact documents based on confidentiality and/or relevance. The Court has reviewed these documents *in-camera* and notes that the redactions are not of personally identifying information of the employees or other individuals. The redacted information consists of what appears to be internal claim numbers assigned to other claims as well as information related to the handling and resolution of other claims by the employee reviewed.

For the reasons stated above in Section A.1, Defendants' arguments regarding

---

[10] For example, the Court noted that documents ACE-001870 and ACE-011113 contain a redaction concerning reserves that should have been removed. However, this redacted information was produced on other duplicative documents (including ACE-007779), so this appears to be an instance where redactions regarding reserves may inadvertently not have been removed.

16

redactions based on confidentiality and/or relevance fail here where there has been no showing that the Protective Order in place is inadequate to protect the redacted information at issue. Further, as Plaintiff notes, Defendants were already ordered to produce these documents in a previous Order issued by this Court, which found that the information was relevant, held that "Ace must fully respond to these requests," and stated that "[t]o the extent Ace has privacy concerns about the production of these materials, the Court orders the production to be made pursuant to the parties' Protective Order." (Doc. 112, PageID.1790-91). Plaintiff's Motion to Compel is **GRANTED**, and Defendants are required to produce unredacted versions of the employee performance reviews at issue.

### 7. RFP No. 7 – Financial Incentive Materials

Plaintiff seeks to compel Defendants to produce another corporate representative "to provide 'complete, knowledgeable, and binding answers on behalf of the corporation' with respect to Ace's financial incentive materials." (Doc. 139, PageID.2979). Specifically, Plaintiff's RFP No. 7 requests documents regarding "any cost containment, pay, bonus, or incentive programs," while Plaintiff's 30(b)(6) notice on this topic, No. 23, similarly seeks "[t]estimony evidencing any cost containment, pay, bonus, or incentive programs for the claims department and/or claims handling employees and supervisors from 2016 to the present." (*Id.* at PageID.2978). Plaintiff alleges that the corporate representative designated to address this topic, Sandra Sutton, "was completely unable to answer any question about **business unit performance**." (*Id.*) (emphasis in original). Plaintiff further alleges that Sutton should have been prepared to testify on "business unit performance" because it was noted in one of the documents produced in response to RFP No. 7 (the "Compensation Cycle U.S. Manager's Guide") as one of the factors used

17

to determine variable compensation.  (*Id.*).  Defendants respond that Sutton gave six hours of testimony regarding 25 of the 28 topics listed in the deposition notice and argue that case law supports their position that a corporate representative's testimony "does not have to be perfect."  (Doc. 145, PageID. 3069-70).

After reviewing the documents produced by Defendants in response to RFP No. 7 and Ms. Sutton's testimony, the Court does not find that Plaintiff is entitled to a second 30(b)(6) deposition on this topic.  Sutton did provide testimony on the topic of variable employee compensation, which was the subject of request No. 23 in the deposition notice.  While the "Manager's Guide" to compensation produced in response to RFP No. 7 does note on one page of a 17-page document that "business unit performance" is a component of "delivering differentiated awards,"[11] business unit performance is not mentioned in the remainder of the document, while there are many other details explaining how managers are to determine compensation to be awarded to their employees.  The fact that Sutton could not explain how business unit performance was part of variable compensation determinations does not necessarily indicate that she was inadequately prepared for her deposition.  Certainly, if additional documents exist that would provide clarification on this point, Defendants are obligated to produce them, but in reviewing the documents produced and the testimony given, the Court does not find that Sutton's testimony on topic No. 23 was inadequate for being unable to provide an answer to one specific question.

Thus, Plaintiff's Motion to Compel is **DENIED** as to this request, and Defendants are not required to produce another corporate representative to testify as to request No.

---

[11] *See* ACE-014207.

23 in the 30(b)(6) notice.

## CONCLUSION

For the reasons discussed above, the Court finds the Motions to Compel are

**GRANTED in part and DENIED in part**:

1. Plaintiff's Motion to Compel is **GRANTED** as to any documents withheld or redactions made on the basis of confidentiality and/or relevance;

2. Plaintiff's Motion to Compel is **DENIED** as to ACE-Withheld-000055-000092;

3. Plaintiff's Motion to Compel is **DENIED** as to any remaining redactions on the basis of privilege in ACE-Withheld-000094-0001056 (produced as ACE-014864-015827);

4. Plaintiff's Motion to Compel is **GRANTED in part and DENIED in part** as to ACE-007708, 007723, 010906, 011067, 011251, 011446, 012822-24 as described above;

5. Plaintiff's Motion to Compel is **DENIED** as to ACE-Withheld-000072-75;

6. Plaintiff's Motion to Compel is **GRANTED**, and Defendants must produce the Requirements document;

7. Plaintiff's Motion to Compel is **MOOT** as to the Marketplace/Fast Track Materials;

8. Plaintiff's Motion to Compel is **GRANTED**, and Defendants must produce the entire "Chubb Records Management Policies" document;

9. Plaintiff's Motion to Compel is **GRANTED** as to RFP Nos. 1, 2, 21 & 22 as described above;

10. Plaintiff's Motion to Compel is **MOOT** as to the Large Loss Report;

11. Plaintiff's Motion to Compel is **GRANTED**, and Defendants must produce the complete, unredacted Reserve Log;

12. Plaintiff's Motion to Compel is **GRANTED**, and Defendants must produce unredacted versions of the employee performance reviews at issue;

13. Plaintiff's Motion to Compel is **DENIED**, and Defendants are not required to

produce another corporate representative to testify as to request No. 23 in the 30(b)(6) notice.

**DONE** and **ORDERED** this the **6th** day of **February, 2024**.

                                s/P. BRADLEY MURRAY
                                **UNITED STATES MAGISTRATE JUDGE**